### THE STATE v. M'DONALD AND ARMSTRONG.

1. A promise was made that a negro should have her freedom at a certain period. The negro remained free during ten years from the time fixed, with the acquiescence of the person claiming her; this is sufficient to prove her entitled to her freedom.

2. The court are not restricted from hearing evidence under special circumstances which would not be admissible before a jury.

3. The liability of witness to a future action is no objection to his competency.

*Sur habeas corpus* to bring up the body of negro Phillis.

M'Donald claimed the negro as his slave—Armstrong disclaimed, &c.

The case, on the evidence of James Linn, Esq., appeared to be as follows :

That, in 1776, Sarah Linn, the mother of witness, purchased the negro from the executors of her husband. After this, Mrs. Linn frequently told witness that Phillis should serve no one but herself, and that after her death, the negro should be free. In 1783, Mr. Hanna addressed witness' mother, and afterwards married her; but, previous to the marriage, witness heard his mother tell Hanna of her intentions with regard to Phillis, that she should be free. In 1785, Mrs. Hanna died. The negro then left Hanna's house, and went to live with Mrs. Armstrong, a daughter of Mrs. Hanna, at whose house, and at the house of one Pearson, in Morris county, she worked as a free woman, until about two years since, when she quitted Pearson's, and has since worked at different [333] places for herself, until last February, when she was seized by M'Donald, under a bill of sale from Hanna, conveying all his right to her. During the period between 1785 and 1795, it appeared that Phillis had married a free negro, and had three children by him.

The witness further offered to prove that after the death of his mother, his sister, Mrs. Armstrong, now also deceased,

The State v. M'Donald and Armstrong.

informed him that his mother, on her death-bed, among other orders, had told her that Phillis should be free, and directed Mrs. Armstrong to take care of and provide for her.

This testimony was objected to by *Frelinghuysen*, for defendant—1st. Because hearsay at second hand. 2d. Because the wife could not, after marriage, devise away or alter the property of her husband without his consent.

*Woodruff*, for negro, cited 2 *Esp. Dig.* 786.

KINSEY, C. J., said the rule of law was that such evidence was to be received by the court as might reasonably be calculated to bring out the truth. Hearsay is, in some cases, admissible testimony, and I do not see how the disclosure of Mrs. Armstrong is to be had, unless in this manner; she was not interested at the time, and is now deceased.

His Honor said it was analogous to the case where what the tenant had told another respecting his being in possession is admitted, and cited *Doe* v. *Williams, Cowp.* 621.

SMITH, J., said that the evidence was admissible. Whether, according to the strict rules of law, it is proper testimony to go to a jury is certainly questionable; but, sitting here as a judge, I have no objection to hear it. Another reason that weighs with me is, that the negro had not the means of perpetuating the testimony.

CHETWOOD, J., dissented, thinking it came within the general rule respecting hearsay testimony.

On the part of M'Donald, Armstrong was offered as a witness, and objected to, because it appeared that he had aided M'Donald in seizing the negro, who, if free, and therefore not liable to seizure, might bring an action of trespass against him.

[334] KINSEY, C. J.  The witness is admissible.  Liability to an action is no disqualification of a witness, more especially where, as in this case, the right of the negro to her freedom, the very point in controversy, must be assumed as the ground on which to reject the witness.  You are never to suppose a person liable, and then upon that ground to reject his testimony.  *Dougl.* 141.  See, also, 4 *Burr.* 2254, *Bailee* v. *Wilson,* cited by Lord Mansfield in *Abrahams* v. *Bunn.*

*Ab. Ogden,*for the negro, in opening the evidence, said he should rely upon the following grounds:

1st. The declarations of the mistress, and cited *Negro Tom's case, M. S.,* reported *ante p.* 3, *State* v. *Administrators of Prall.*

2d. The acquiescence on the part of Hanna for ten years, the negro's marriage and having children.  *Margaret Reass' case, M. S.*

3d. The statute of limitations, which he insisted extended to cases not within its words.  2 *Burr.* 961.  And, as in this case, after such a lapse of time Hanna could not have trover against one for detaining the negro, he should not by a parity of reason be admitted to seize her person.

The case, however, after the evidence was closed, was submitted without argument.

PER CUR.  This negro woman was a slave of Mrs. Hanna, and during the period of her ownership, and before her marriage, she frequently declared that Phillis should be free at her death, and that she should serve no other person.  She made use of the same language to Mr. Hanna, while he was addressing her; and in fact, after her death, which was in 1785, Phillis became free, and was allowed to remain free until 1795, when, for the first time, a claim asserted under Hanna's bill of sale, and this woman and her three children are seized by these speculators in human flesh, and claimed as slaves.

We are of opinion that these declarations of the mistress,

Hanna's acquiescence for so long a period of time, and the circumstance of the negro's having enjoyed her freedom from [335] the death of the mistress, are sufficient evidence of her right to liberty at the death of Mrs. Hanna.

In equity, a thing agreed to be done is looked upon as done; and in a case where the liberty of a human being is involved—where the promise is coolly and deliberately made —it ought to receive from this court a similar construction. It is far better to adopt this rule than to suffer promises thus made, in a matter of so great consequence to a human creature, to be violated or retracted at pleasure. (a)

Negro liberated.

(a) See *Ketletas* v *Fleet*, 7 *Johns.* 324.